IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICK JONES, SR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DARREN "HAP" SWEENEY, ) <br> ) <br> Defendant. ) <br> _____ ) | 1: 04-CV-6214 AWI DLB <br><br> **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> (Document #119) |

**BACKGROUND**

This is a civil rights action brought by Plaintiff Frederick Jones, Sr. ("Plaintiff"). Plaintiff's November 24, 2004 first amended complaint ("complaint") alleges that Plaintiff's Fourth Amendment rights were violated when Defendant Deputy Darren "Hap" Sweeny ("Defendant") subjected Plaintiff to an illegal seizure without probable cause and used excessive force on Plaintiff. The complaint also alleges that Defendant violated Plaintiff's rights under the Equal Protection Clause.

On January 5, 2009, Defendant filed a motion for summary judgment. Defendant contends that Plaintiff's Fourth Amendment claims are barred under Heck v. Humphrey 512 U.S. 477 (1994) because Plaintiff's criminal conviction has not been reversed or vacated. Defendant also contends that under the doctrine of collateral estoppel the criminal conviction bars Plaintiff's claims. Defendant further contends that Plaintiff lacks sufficient evidence to support his Fourth

1    Amendment claims.  Finally, Defendant contends that there is no evidence to support Plaintiff's
2    Equal Protection Clause claim.
3            On January 29, 2009, Plaintiff filed an opposition to Defendant's motion for summary
4    judgement.
5            On February 9, 2009, Defendant filed a reply to Plaintiff's objections to Defendant's
6    separate statement of undisputed material facts in support of motion for summary judgment.

**LEGAL STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir 2003).

> Under summary judgment practice, the moving party [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 987 (9th Cir. 2006).  A fact is material if it could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Miller, 454 F.3d at 987.  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Anderson, 477 U.S. at 248; Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. 477 U.S. at 322; Miller, 454 F.3d at 987. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. 477 U.S. at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)); Miller, 454 F.3d at 987. In attempting to establish the existence of this factual dispute the opposing party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Miller, 454 F.3d at 987. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Cline v. Industrial Maintenance Engineering & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; In re Caneva, 550 F.3d 755, 761 (9th Cir. 2008); Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1144 (9th Cir. 2006). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." First Nat'l Bank, 391 U.S. at 290; Giles v. General Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, admissions, and affidavits filed with the court. Rule 56(c); Poller, 368 U.S. at 468; Price v. Sery, 513 F.3d 962, 965 n.1 (9th Cir 2008); Lockett v. Catalina Channel Exp., Inc., 496 F.3d 1061, 1064 (9th Cir. 2007). "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255; Miller, 454 F.3d at 987; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). However, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## FACTS

**A. Preliminary Undisputed Facts**

In 2003, Paz Florez lived at 721 Denton Avenue in Corcoran and was acquainted with a woman named Marsha Scott. On the evening of August 21, 2003, Mr. Flores gave Ms. Scott a ride to a friend's house in Corcoran. After Ms. Scott was turned away, Mr. Flores was in the process of driving Ms. Scott to another person's house when Ms. Scott flagged down Plaintiff and another black male driving a Chevrolet Camaro. At this time, Plaintiff was on parole, having been released on August 4, 2003 for serving time for a parole violation. Ms. Scott exited Mr. Flores' vehicle and entered the Camaro.

4

Later in the evening, at approximately 4:00 a.m., Ms. Scott returned to Mr. Flores' residence, accompanied by Plaintiff and another black male. While Ms. Scott was let inside of the house Mr. Flores denied Ms. Scott's request to allow the other subjects into the house. Once inside Ms. Scott asked Mr. Flores to borrow money and asked to use the restroom. At this time Mr. Flores' wallet and keys were in his pillowcase, and Ms. Scott knew that Mr. Flores kept his wallet in the bedroom. After Ms. Scott used the bathroom, Mr. Flores suggested that Ms. Scott leave through the garage door because he was worried about the two black males. However, Ms. Scott said that she wanted to leave through the front door, and Mr. Flores accommodated this request.

At the front door Ms. Scott said that she did not want to leave, but Mr. Flores opened the door. At this point Plaintiff stuck his foot in the door, pulled a gun, and demanded that Mr. Flores come outside. After saying that he would not come outside, Mr. Flores told Plaintiff that he was coming outside; however, he then quickly closed the door. Plaintiff then kicked a hole in the door, reached in, and unlocked the deadbolt lock. At this point, Ms. Scott went back to Mr. Flores' bedroom, took Mr. Flores' wallet and keys from their location on his bed, and exited the room. Mr. Flores then went back to his bedroom and obtained a hatchet from his closet. While in his bedroom, Mr. Flores heard Ms. Scott speaking to Plaintiff inside the house saying "Let's go." Ms. Scott and Plaintiff then left the house.

Mr. Flores then went to a neighbor's house, and the neighbor called the police. At 4:17 a.m., Officer Alex Chavarria from the Corcoran Police Department was dispatched to Mr. Flores' home. Mr. Flores informed Officer Chavarria that Ms. Scott came by his house with two unknown male companions. Mr. Flores informed Officer Chavarria that he invited Ms. Scott into his residence where she asked to borrow money and asked to use the bathroom. Mr. Flores informed Office Chavarria that he would not allow the male companions into the residence. Mr. Flores informed Officer Chavarria that when he opened the front door to let Ms. Scott out Plaintiff stuck his foot in the door, brandished a firearm, and ordered him outside. Mr. Flores

informed Officer Chavarria that he was able to shut the door but that Plaintiff kicked a hole in the door. Mr. Flores informed Officer Chavarria that Plaintiff pointed the gun through the hole and reached in to unlock the door.

After Officer Chavarria left, Mr. Flores went to his bedroom and noticed that his wallet was gone.

While driving away, Plaintiff told Ms. Scott to give him the money that was in Mr. Flores' wallet. At Plaintiff's request Ms. Scott threw the wallet out of the window somewhere between Corcoran and Tulare. Items from Mr. Flores' wallet were returned to him a couple of days later by a person who said he found it in Tulare. However, Mr. Flores' wallet and $20.00 in cash remained missing.

After interviewing Paz Flores, Officer Chavarria put out a be-on-the-lookout ("BOL") bulletin for Ms. Scott. On August 28, 2003, Officer Chavarria received a phone call from Ms. Scott who informed Officer Chavarria that she was going to come into the police station. Officer Chavarria contacted Ms. Scott at the Department of Social Services and arrested her. Officer Chavarria then interviewed Ms. Scott who told Officer Chavarria about the event at Paz Flores's house.

On August 28, 2008, a warrant was issued for Plaintiff's arrest based on a violation of his parole because a BOL had been issued by Officer Chavarria.

On August 30, 2003, Mr. Flores selected Plaintiff out of a photo line-up and identified him as the suspect with the gun.

On the morning of September 6, 2003, Plaintiff and a man named Lester Alexander traveled from Bakersfield to Corcoran in Plaintiff's Camaro.

During this morning, Deputy Darren Sweeney was on uniformed patrol in a marked patrol vehicle and was responding to a 911 "hang up" call in Corcoran. Deputy Sweeney was driving eastbound on Whitley Avenue, near 7th Avenue, when he saw a gold Chevy Camaro traveling westbound on Whitley Avenue. As the car passed, Deputy Sweeney saw that Plaintiff was

driving the car and that there were two persons in the car. Deputy Sweeney recognized Plaintiff based on prior contacts with Plaintiff. Deputy Sweeney was aware that Plaintiff was wanted for a robbery committed in the City of Corcoran, as well as a parole violation. At the time Deputy Sweeney saw Plaintiff, Plaintiff's BOL was in Deputy Sweeney's view in his vehicle. Plaintiff has no evidence that Deputy Sweeney was motivated by a discriminatory animus in attempting to stop Plaintiff.

When Deputy Sweeney turned his patrol car around in order to attempt a vehicle stop, Plaintiff turned southbound onto 7th Avenue. While following Plaintiff on 7th Avenue, Deputy Sweeney activated his overhead lights and commenced the intermittent use of the siren. After Plaintiff turned eastbound onto Ottawa Avenue, Deputy Sweeney caught up with Plaintiff. Plaintiff stopped abruptly at the stop sign at 6th Avenue and Ottawa Avenue. Deputy Sweeney stopped approximately 10-12 feet behind Plaintiff's vehicle.

**B. Defendant's Facts Concerning Shooting**

Concerning the details of what happened next, Defendant provides the following details:

1. Both Plaintiff and Deputy Sweeney quickly exited their vehicles.
2. Deputy Sweeney saw Plaintiff in a stance with his hands in front of him and instinctively ducked behind the open driver's side door.
3. At this time, Deputy Sweeney heard approximately 4-5 gunshots discharged by Plaintiff; One of which shattered the door's window.
4. While Plaintiff denies shooting at Deputy Sweeney, he has no evidence that shots were not fired at Deputy Sweeney.
5. When Plaintiff stopped firing Deputy Sweeney stood at his driver's side door and returned fire at Plaintiff, who was getting in the car.
6. Deputy Sweeney then fired approximately 14 shots at Plaintiff's car, shattering the rear window and striking several parts of the car.

7.  Plaintiff then drove off from the scene, followed by Deputy Sweeney.
8.  While Plaintiff drove southbound on 6th Avenue, the passenger in Plaintiff's car immediately raised his arms through the passenger window.
9.  Plaintiff continued to weave through Corcoran, ending up eastbound on Quebec Avenue.
10. Plaintiff crossed Highway 43 without stopping at the stop sign and continued into Tulare County where Quebec Avenue turned into Road 144.
11. Deputy Sweeney kept contact with dispatch during the course of the chase.
12. At some point in the pursuit Plaintiff tossed his firearm out of the passenger side window.
13. The gun used by Plaintiff was later retrieved by a deputy sheriff.
14. At some point on Road 144, Plaintiff reached railroad tracks where a train was crossing.
15. Plaintiff slid his vehicle to a stop on the dirt road on the west side of the tracks.
16. As Deputy Sweeney exited his patrol vehicle with his shotgun, Plaintiff drove away southbound.
17. Deputy Sweeney noticed that when Plaintiff drove off, the passenger was no longer in the car. Deputy Sweeney slowly approached the area and saw the passenger, Lester Alexander, laying on the ground.
18. Deputy Sweeney took Mr. Alexander into custody, and discontinued the chase.

**C.  Plaintiff's Facts Concerning the Shooting**

Plaintiff provides the following details concerning shooting:
1. Evidence exists to maintain Plaintiff's Fourth Amendment claim and Fourteenth Amendment Equal Protection claim.
2. Defendant discharged his firearm recklessly and with callous intent at Plaintiff's car, which was occupied by several occupants.
3. Only one person jumped out of the car & opened fire at Defendant.
4. A passenger stuck his arms out of Plaintiff's car.

8

5. The passenger's side of the car had several bullet holes.

6. Plaintiff did not jump out of driver's side of car and open fire on Defendant.

7. A bystander witness described the shooter as wearing clothing articles that did not fit Plaintiff's clothing articles.

8. Evidence exists that Plaintiff was in the back seat of his car and was shot in the back seat.

9. Evidence exists that the passenger who was captured was never subjected to a gun shot residue test.

10. Evidence also exists, based on the passenger's testimony, that when Defendant captured him Defendant said "'he' tried to kill me meaning the defendant & capturee (sic)."

11. The evidence as described by Plaintiff is located within his criminal transcript that is currently being maintained by his appellant counsel, Roger Nuttal & Charles Bonne.

**D. Additional Undisputed Facts**

Later in the morning, Bakersfield Police Officer Scott Miller was driving in a marked patrol vehicle with another Officer (Officer Hernandez) and was attempting to locate a burglary suspect on Chester Place. While driving westbound on Chester Place, Officer Miller noticed a pickup truck with several individuals around it that appeared to be a narcotics transaction. Officer Miller then turned his patrol vehicle around and brought it behind the truck. Included with the subjects located around the truck was a black male holding a towel across his shoulder area. This subject, later identified as Plaintiff, "leg bailed" as soon as Officer Miller stopped the patrol vehicle.

Officer Miller noticed that Plaintiff appeared to have a wound on his backside. Officer Miller also noticed a bronze colored Camaro with numerous bullet holes and missing glass. Officer Hernandez exited the patrol vehicle and chased Plaintiff, while Officer Miller stayed back with the other subjects. Eventually, Plaintiff was taken into custody by three officers. Plaintiff resisted the officers and kicked out the driver's side rear window of the patrol vehicle. Plaintiff

was removed from the scene in an ambulance so that he could be restrained on a gurney.

On September 6, 2003, a gunshot residue test was performed on Plaintiff, which revealed the presence of gunshot residue on Plaintiff's hands. Nancy McCombs, a ballistics expert with the Department of Justice, determined that the weapon retrieved was the gun used by Plaintiff in the shooting.

An Information was filed on May 24, 2004 and contained six counts: Count 1 for a violation of Penal Code §§ 187(a) and 664(e)-(f) (attempted murder of a peace officer); Count II for a violation of Penal Code § 245(d)(1); Count II for a violation of Penal Code § 246 (shooting at occupied vehicle); Count IV for a violation of Penal Code § 211 (robbery in the first degree); Count V for a violation of Penal Code § 245 (a)(2) (assault with a deadly weapon); and Count VI for a violation of Penal Code § 459 (burglary in the first degree).

On August 20, 2004, Plaintiff's motion to suppress evidence pursuant to California Penal Code § 1538.5, based on an alleged unlawful arrest stemming from an alleged illegal traffic stop by Deputy Sweeney, was denied.

Plaintiff's criminal trial commenced on August 25, 2004. In his opening statement, Plaintiff told the jury that he was innocent and that he intended to prove that he was innocent. During the trial Plaintiff presented to the jury his version of the facts in the case and claimed that he was not the driver of the car. After the parties rested, the trial judge instructed the jury as to the applicable law for the counts that Plaintiff was charged with. In his closing argument, Plaintiff again claimed that he was innocent of all the charges. For their deliberations, the jury was presented with CALJIC 8.68 (Attempted Murder-Peace Officer Victim), which requires that the peace officer be engaged in the performance of his or her duties. Except for Count II (assault with a deadly weapon on a peace officer), which was a lesser crime to that of Count I (attempted murder of a peace officer), Plaintiff was convicted on all counts in the Information. On September 29, 2004, Plaintiff was sentenced to 52 years to life in prison. On September 29, 2004, the Abstract of Judgment was filed with the Kings County Superior Court.

Plaintiff is appealing his conviction, and his appeal is still pending in the Fifth District Court of Appeal.

**DISCUSSION**

**A. Heck**

Defendant contends that Heck bars Plaintiff's claims in this action. In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court reviewed whether a prisoner could bring a civil rights action under 42 U.S.C. § 1983 to challenge his conviction. The Supreme Court recognized that Section 1983 actions, like civil tort actions, are not appropriate vehicles to challenge the validity of outstanding criminal judgments if such a challenge necessarily requires the plaintiff to prove the unlawfulness of his conviction. Id. at 486. The Supreme Court concluded that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Id. at 486-87 (footnote omitted). Until such time as the plaintiff's conviction is invalidated, a cause of action under section 1983 for damages is not cognizable. See id. To review whenever a civil rights action challenges a conviction: (1) The court must determine whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the conviction; and if it would, and (2) The court must determine whether the plaintiff's conviction has already been invalidated. See Harvey v. Waldron, 210 F.3d 1008, 1013 (9th Cir. 2000), *overruled on other grounds by* Wallace v. Kato, 549 U.S. 384 (2007).

***1. Fourth Amendment Unlawful Seizure Claim***

Defendant contends that Plaintiff's Fourth Amendment unlawful seizure claim is barred by Heck. Plaintiff's Fourth Amendment claim is based on Defendant's actions in pulling over

Plaintiff's Camaro on September 6, 2003. As discussed above, in Plaintiff's criminal case Plaintiff filed a motion to suppress evidence based on an alleged unlawful arrest. Plaintiff argued in this motion that his arrest stemmed from an illegal traffic stop by Defendant. The criminal trial judge denied Plaintiff's motion.

In denying Plaintiff's motion to suppress in the criminal case, the criminal trial judge found that Defendant had the requisite probable cause and/or reasonable suspicion to stop Plaintiff's Camaro. The events at issue in this case, which Plaintiff claims give rise to his unreasonable seizure claim, are the exact same events that were at issue in the underlying criminal proceeding. Plaintiff cannot have been unreasonably seized under the Fourth Amendment because the criminal trial judge previously found that Defendant's stop of Plaintiff was lawful. Granting Plaintiff any form of relief under the Fourth Amendment in this action would necessarily imply the invalidity of his conviction. Plaintiff admits his conviction has not been overturned on appeal. Accordingly, Defendant is entitled to summary judgment on Plaintiff's Fourth Amendment claim based on Defendant's seizure of Plaintiff because Heck bars this claim.

### 2. Fourth Amendment Excessive Force Claim

Defendant contends that Heck bars Plaintiff's Fourth Amendment excessive force claim because a verdict in Plaintiff's favor on this claim would call into question the integrity of Plaintiff's conviction for the attempted murder of Defendant. In his opposition, Plaintiff provides trial transcripts from his trial, a brief which cites these trial transcripts, and pictures of Plaintiff's clothing when he was arrested and the passenger side of the car. Plaintiff uses this evidence to attempt to show there is a disputed issue of fact on who was actually shooting at Defendant.

In Cunningham v. Gates, 312 F.3d 1148 (9th Cir. 2002), the police began surveillance on Daniel Soley and Robert Cunningham after the police received information that they had been involved in a robbery. Id. at 1151. The officers watched Soley and Cunningham rob a liquor

store, and they boxed in Soley's and Cunningham's car as they tried to escape. Id. at 1151-52. A shoot-out followed that left Soley dead and Cunningham paralyzed. Id. at 1152. A jury convicted Cunningham or three counts of attempted murder of the police officers, Soley's murder under a felony murder theory, robbery and burglary. Id. To find Cunningham guilty of Soley's murder, the jury was instructed that they needed to find an intentional provocative act by Cunningham that, among other things, was not an act of self defense. Id. Soley's parents and Cunningham sued alleging a Fourth and Fourteenth Amendment violation as a result of the police's alleged excessive force. Id. Their theory was the police created the dangerous situation and that the police started the shooting. Id. at 1152-54. The Ninth Circuit found that Cunningham's claims were squarely barred to the extent they depended on the theory that Cunningham did not provoke the firestorm. Id. at 1154. Because the jury clearly found Cunningham was not acting in self-defense during the firefight, any civil verdict finding the police used excessive force during the same firefight was barred under Heck. Id.

The court agrees with Defendant that this action falls under the same reasoning as Cunningham. To have found Plaintiff guilty of the attempted murder of Defendant, the criminal jury clearly found that Plaintiff was the shooter, and not merely a passenger in the car. The jury also found that Plaintiff was not acting in self defense. The very fact that Plaintiff is currently relying on his criminal trial transcripts to attempt to show a disputed issue of fact on who the shooter was and on whether Defendant's shots of the passenger door were reasonable shows that Plaintiff is trying to re-litigate a factual issue already decided against him in the criminal case. A civil verdict finding Defendant used excessive force because Plaintiff was only a passenger and Defendant did not need to fire his gun at the passenger door is inconsistent with a criminal verdict finding Plaintiff was the shooter. Plaintiff's conviction for attempted murder has not been overturned on appeal. Thus, Plaintiff's excessive force claim is barred by Heck.

### 3. Equal Protection

Because the Equal Protection Clause claim can be denied for the reasons set forth below,

it is unnecessary to determine if this claim is barred by Heck.

**B. Equal Protection Clause Claim**

Defendant contends that Plaintiff's equal protection clause claim is barred because there is no evidence Defendant's actions were motivated by a discriminatory animus. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. First, a plaintiff establishes an equal protection claim by showing that a defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (*citing* Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998). Under this theory of equal protection, the plaintiff must show that the Defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005); Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir. 1995). Second, a plaintiff can establish an equal protection claim by showing similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004) (*quoting* Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). Without more, the selective enforcement of valid laws is not sufficient to establish that a defendant's conduct is irrational. Freeman, 68 F.3d at 1188 (*citing* Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978); United States v. Kidder, 869 F.2d 1328, 1335 (9th Cir.1989)). If there is a rational basis for the unequal treatment, the plaintiff must show that proffered basis was a pretext and the defendant was really motivated by malignant animosity. Squaw Valley, 375 F.3d at 936 & 948.

Defendant has come forward with evidence, in the form of Plaintiff's deposition transcript, that Plaintiff admits he has no evidence Defendant's conduct was motivated by a

discriminatory animus. Plaintiff has not provided any evidence, as opposed to argument, showing that Defendant treated Plaintiff differently than other similarly situated persons because of his race. Plaintiff has provided no evidence of Defendant's malignant animosity.

A defendant can meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case; i.e. that the plaintiff does not have evidence from which a jury could find an essential element of the opposing party's claim. Celotex, 477 U.S. at 322; Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 & 1106 (9th Cir. 2000). If a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. Nissan Fire, 210 F.3d at 1102; Cline v. Industrial Maintenance Eng'g. & Contracting Co., 200 F.3d 1223, 1229 (9th Cir.2000). If the nonmoving party fails to produce enough evidence to make a showing sufficient to establish the existence of an element essential to that party's case, the moving party wins the motion for summary judgment. Celotex, 477 U.S. at 322; Nissan Fire, 210 F.3d at 1102. Because Plaintiff has failed to show a disputed issue of material fact on the Equal Protection Clause claim, Defendant is entitled to summary judgment.

**ORDER**

Accordingly, based on the above memorandum opinion, the court ORDERS that:

1. Defendant's motion for summary judgment is GRANTED;
2. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant and close this file;
3. All further deadlines and court dates are VACATED; and
4. All pending motions are DENIED as moot.

IT IS SO ORDERED.

**Dated:    March 17, 2009**                    /s/ Anthony W. Ishii
                                         CHIEF UNITED STATES DISTRICT JUDGE